HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELAINE CHAO, Secretary of Labor, United States Department of Labor,

Plaintiff,

v.

PAUL MATHESON, an individual d/b/a BABY ZACK'S SMOKE SHOP; CATHY MATHESON, an individual, FELICIA MATHESON, an individual, and NICK MATHESON, an individual,

Defendants.

Case No. C06-5361RBL

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the Plaintiff's Motion for Summary Judgment [Dkt. #31], which is in turn based on the Parties' Stipulation of Facts [Dkt. #s 27 and 30].

There is but one issue remaining in the case: whether the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, applies to the Defendants, who are members of a Native American tribe doing business on tribal land. Plaintiff asserts that the FLSA applies notwithstanding the defendants' status as registered tribal members and the fact their business is on tribal land. Defendants argue that the FLSA does not and cannot apply to them because that Act would conflict with the Treaty of Medicine Creek, and that the Supreme Court has held that the United States Government does not interfere with "purely intramural tribal matters."

If the Act applies, the Plaintiff's Motion is well taken and judgment will be entered against the

ORDER
Page - 1

1  Defendants on the stipulated facts. If not, the Defendants' failure to pay overtime wages to its employees is
2  beyond the reach of the Federal government and the Plaintiffs' Motion will be denied and, on a motion, her
3  case dismissed.

4  The parties agree that the relevant Supreme Court authority is outlined in *Donovan v. Coeur d'Alene*
5  *Tribal Farm*, 715 F. 2d 1113 (9th Cir. 1985), though each argues that that authority supports their respective
6  position.

7  *Donovan* dealt with the applicability of OSHA worker safety rules to a farm operating on tribal land.
8  The underlying statute, like the FLSA at issue here, was one of general applicability. It did not specifically
9  state that it applied to native American tribes, and it did not expressly say that it did not. The Court described
10 the issue as "whether Congress *intended* to exercise its plenary authority over Indian tribes. More precisely,
11 it is whether congressional silence should be taken as an expression of intent to exclude tribal enterprises from
12 the scope of an Act to which they would otherwise be subject." *Id.* at 1115.

13 The Court first outlined and confirmed that "[it is] now well settled by many decisions of this Court
14 that a general statute in terms applying to all persons includes Indians and their property interests." *Id.* at
15 1115, *citing FPC v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960). "In short," it explained, "we have
16 not adopted the proposition that Indian tribes are subject only to those laws of the United States expressly
17 made applicable to them. Nor do we do so here." *Donovan* at 1115.

18 The *Donovan* court also recognized that the general principle, which would otherwise suggest that
19 OSHA applied to the tribe in question, had three exceptions:

20 There are, however, three exceptions to this principle [of general applicability.] A federal
   statute of general applicability that is silent on the issue of applicability to Indian tribes will not
21 apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural
   matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian
22 treaties"; or (3) there is proof "by legislative history or some other means that Congress
   intended [the law] not to apply to Indians on their reservations ...." In any of these three
23 situations, Congress must *expressly* apply a statute to Indians before we will hold that it
   reaches them.
24 *Id.*

25 It is clear that the FLSA does not specifically include or exclude tribal members. The general principle
26 suggests that the tribe is subject to the FLSA. The question, then, is whether one or more of these three
27 exceptions apply to prohibit the Act's application to the defendants in this case.

28 The Defendants argue that the first two exceptions apply. They argue that the payment of wages to

ORDER
Page - 2

tribal employees, or to non-members working in a tribal business, is governed by the Tribe, and not by the U.S. government through the FLSA. Regulation of the payment of such wages, it claims, is a "purely intramural matter" that is beyond the reach of a statue of general application in the absence of an express statement of Congressional intent.

The cases discussing the "purely intramural" exception do not support this claim. In *Donovan*, the 9th Circuit explained that the "tribal self-government exception is designed to except purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations from the general rule that otherwise applicable federal statutes apply to Indian tribes." *Id.* at 1116. Indeed, the *Donovan* court squarely rejected the argument made by plaintiffs here, pointing out that the logical conclusion of such a reading would be to prohibit the imposition of federal taxes on tribal businesses:

> To accept [Plaintiff's argument] would bring within the embrace of "tribal self-government" all tribal business and commercial activity. Our decisions do not support an interpretation of such breadth. For example, if the right to conduct commercial enterprises free of federal regulation is an aspect of tribal self-government, so too, it would seem, is the right to run a tribal enterprise free of the potentially ruinous burden of federal taxes. Yet our cases make clear that federal taxes apply to reservation activities even without a "clear" expression of congressional intent.

*Id.* Thus, for the same reason the "purely intramural" exception did not preclude the application of OSHA safety regulations to a tribal farm, it does not preclude application of the FLSA to the Plaintiffs' tribal business in this case.

The second exception applies when a statute of general applicability conflicts with a treaty right. Defendants argue that the 1854 Treaty of Medicine Creek, one of the "Stevens Treaties," reserved to the Tribe the right to exclude non-tribal members, and precluded the forfeiture of Indian land. They argue that those rights prohibit the application of the FLSA in this case, absent an express statement that Congress intended the FLSA to apply to Indian tribes. They rely on the statement in *United States v. Lara*, 541 U.S. 193 (2004), made in a different context, that tribes retain all authority not taken away by treaties. *Id.* at 599. While this statement is generally true, it does not directly address the issues presented here.

The Defendants also rely on the Tenth Circuit's decision in *National Labor Relations Board v. Pueblo of San Juan*, 276 F. 3d 1186 (10th Cir. 2002), and argue that it correctly predicted the law as articulated two years later in *Lara*. Defendants claim *Pueblo of San Juan* stands for the proposition that treaty tribes are "excluded from all federal laws affecting Indian employers."

It is doubtful that the Court meant to be, or should be, interpreted so broadly. *Pueblo of San Juan* dealt with the interplay between the national Labor Relations Act (NRLA) and a tribe's own "right to work" ordinance. The NLRA is not a statue of general application; it excludes states and territories. The issue in *Pueblo of San Juan* was whether the Federal Act preempted the tribe's ordinance, or whether the tribe was permitted (as a state would be) to enact its own ordinances on the subject. The court described its task as follows:

> In order to find preemption of tribal laws, . . . it is necessary to determine whether Congress intended to divest the San Juan Pueblo of its power as a sovereign to pass right-to-work laws.

*Id.* at 1192. Specifically *not* at issue in that case was the claim made here, that a generally applicable federal statute simply does not apply to private businesses on tribal land:

> Furthermore, the Pueblo does not challenge the supremacy of federal law. The ordinance, as amended, does not attempt to nullify the NLRA or any other provision of federal law. The suggestion that tribes, including those that have already enacted right-to-work laws might "enact ordinances allowing precisely what generally applicable federal law prohibits" finds no support in this record.

*Id.* at 1191.

This case, in contrast, does not turn on whether or not a tribal law conflicts with or is preempted by the FLSA. Despite defendant's claim to the contrary, this is not a case involving the tribal sovereign's effort to govern or regulate economic activity on tribal land, and the effectiveness of a federal statute to contradict that tribal law. *Pueblo of San Juan* discussed the limits of a tribe's ability to govern economic activity on its own land:

> In addition to broad authority over intramural matters such as membership, tribes retain sovereign authority to regulate economic activity within their own territory. . . . However, courts have described the tribes' status as necessarily resulting in the loss of their power to "engage in foreign relations, alienate their lands to non-Indians without federal consent, or prosecute non-Indians in tribal courts which do not accord the full protections of the Bill of Rights." . . . Courts have likewise found divestiture of tribal power to tax or regulate certain activities by non-Indians where such activities do not directly affect tribal political integrity, economic security, health, or welfare.

*Id.* at 1192 (internal citations omitted).

The Defendants' argument that the FLSA does not and cannot apply to their tribal business is not supported by cases, including *Pueblo of San Juan,* describing the tribal sovereign's retained authority to govern. The Defendants are individuals operating a business on tribal land, employing non-tribal members and selling to non-tribal customers. This case does not involve any effort on the part of the tribe to govern in this area.

Defendants' argument that the FLSA conflicts with the tribe's treaty right to exclude non tribal members is incorrect. The FLSA applies to the Defendants and the Plaintiff's Motion for Summary Judgment [Dkt. #31] is therefore GRANTED.

Plaintiff is hereby Ordered to submit a judgment for the court's review within seven days of the date of this Order.

DATED this 25th day of June, 2007.

　　　　　　　　　　　／s／ Ronald B. Leighton
　　　　　　　　　　　RONALD B. LEIGHTON
　　　　　　　　　　　UNITED STATES DISTRICT JUDGE